IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LAURA WHITE | : | CIVIL ACTION |
| v. | : | |
| MICHAEL J. ASTRUE | : | NO. 08-4486 |

## MEMORANDUM

Padova, J.                                                                                      February 19, 2010

Plaintiff Laura White filed this action, seeking judicial review of the decision of Defendant, Social Security Commissioner Michael Astrue ("Commissioner"), which denied her claim for Social Security Disability ("DIB") benefits. After Plaintiff filed a Motion for Summary Judgment or Remand (the "Motion"), we referred the matter to Magistrate Judge M. Faith Angell, who issued a Report and Recommendation ("R & R") that Plaintiff's Motion be denied and that judgment be entered in favor of the Commissioner. Plaintiff has now filed timely objections to the R & R. For the reasons that follow, we overrule Plaintiff's objections and approve and adopt Magistrate Judge Angell's R & R.

## I. BACKGROUND

Plaintiff is a 49-year-old woman with a twelfth grade education, who previously worked as a nurse assistant, and who recently received her certified nurse assistant license. (R. 20, 45, 57-58, 65-66, 371.) Plaintiff applied for disability benefits on October 19, 2005, alleging that she is disabled as a result of major depression, panic disorder, foot problems, high blood pressure, migraine headaches, and back problems. (R. 64.)

The Social Security Administration denied Plaintiff's claim on March 20, 2006. At Plaintiff's request, she had a hearing before an Administrative Law Judge ("ALJ") on December 11,

2006. In a decision dated March 6, 2007, the ALJ determined that only Plaintiff's discogenic and degenerative disorders of the lumbar spine constituted a severe impairment. (R. 16-17.) The ALJ further found that Plaintiff had a residual functional capacity ("RFC") for a range of light work. Considering her age, education, and work experience, the ALJ determined that Plaintiff was not disabled and therefore was not entitled to benefits. (R. 20-21.) The Appeals Council denied Plaintiff's request for review on July 11, 2008, thereby making the ALJ's decision the final decision of the Commissioner. (R. 4.)

Plaintiff argues both in the Motion and her objections that the ALJ (1) failed to discuss key medical evidence, (2) erroneously ruled that Plaintiff's depression was not a severe impairment, and (3) improperly relied on the Medical-Vocational Guidelines in finding that she was not disabled.[1] She requests that we sustain her objections, reject the Magistrate Judge's R & R, and grant judgment in her favor.

## II. LEGAL STANDARD

Under the Social Security Act, a claimant is disabled if he is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). The burden to prove the existence of a disability rests initially upon the claimant. 42 U.S.C. § 423(d)(5)(A). Under the medical-vocational regulations that the Commissioner has promulgated, the Commissioner uses a five-step

---

[1] Plaintiff further contends that the ALJ's finding of no disability is not supported by substantial evidence. However, she develops no separate arguments to further this point. Accordingly, to the extent we reject Plaintiff's other arguments that particular aspects of the ALJ's opinion were not supported by substantial evidence, we additionally reject her contention that the ALJ's ultimate conclusion is similarly unsupported.

sequential evaluation process to decide disability claims. At the first step, the ALJ determines whether the claimant is currently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(b). If the ALJ finds that the claimant is engaging in substantial activity, the disability claim is denied. Id. At the second step, the ALJ determines whether the claimant has a severe impairment, and will deny the claim for benefits if no severe impairment is proven. 20 C.F.R. § 404.1520(c). At the third step, the ALJ determines whether the claimant's impairment meets the durational requirement and is either listed or equal to a listed impairment that is presumed severe enough to preclude any gainful work. 20 C.F.R. § 404.1520(d). If the claimant does not suffer from a listed impairment or its equivalent, the ALJ continues to steps four and five. At the fourth step, the ALJ determines whether the claimant possesses the RFC to perform her past work. 20 C.F.R. § 404.1520(e). If the claimant satisfies the burden of demonstrating an inability to return to her past relevant work, the ALJ proceeds to the fifth step, at which point the burden shifts to the Commissioner to demonstrate that the claimant is capable of adjusting to other available work. 20 C.F.R. § 404.1520(f); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 205-06 (3d Cir. 2008) (quoting Rutherford v. Barnhart, 399 F.3d 546, 551 (3d Cir. 2005)). In order to deny a claim for benefits at the fifth step, the ALJ must find that other jobs exist in significant numbers in the national economy that the claimant can perform, consistent with the claimant's medical impairments, age, education, work experience, and RFC. 20 C.F.R. § 404.1520(g).

To evaluate mental impairments, the ALJ must evaluate the claimant's "pertinent symptoms, signs, and laboratory findings to determine whether [the claimant has] a medically determinable mental impairment(s)." 20 C.F.R. § 404.1520a(b)(1); see also Plummer v. Apfel, 186 F.3d 422, 428 (3d Cir. 1999). If an impairment is found, the ALJ must rate the functional limitation resulting from

3

such impairment based upon the extent to which the impairment "interferes with [the claimant's] ability to function independently, appropriately, effectively, and on a sustained basis" in four functional areas: "Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." 20 C.F.R. §§ 404.1520a(c)(2)-(3). If the claimant's mental impairment is severe, the ALJ then determines whether it "meets or is equivalent in severity to a listed mental disorder." 20 C.F.R. § 404.1520a(d)(2). If the claimant's impairment is severe, but does not reach the level of a listed mental disorder, the ALJ then assesses the claimant's RFC. 20 C.F.R. § 404.1520a(d)(3).

Judicial review of the Commissioner's final decision is limited, and the ALJ's findings of fact will not be disturbed if they are supported by substantial evidence. Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004) (citing Schaudeck v. Comm'r of Soc. Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999)). Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Rutherford, 399 F.3d at 552 (quoting Reefer v. Barnhart, 326 F.3d 376, 379 (3d Cir. 2003)). "It is more than a mere scintilla of evidence but may be less than a preponderance." Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988) (citing Stunkard v. Sec. of Health and Human Servs., 841 F.2d 57, 59 (3d Cir. 1988)). The ALJ's legal conclusions are subject to plenary review. Schaudeck, 181 F.3d at 431.

We conduct a de novo review of those portions of a Magistrate Judge's report and recommendation to which objections are made. 28 U.S.C. § 636(b)(1). We may accept, reject, or modify, in whole or in part, the Magistrate Judge's findings or recommendations. Id.

4

## III. DISCUSSION

A. <u>Whether the ALJ Erred in Declining to Discuss Dr. Mrykalo's Findings</u>

First, Plaintiff argues that the Magistrate Judge committed a legal error in recommending that the ALJ did not err in failing to discuss key medical evidence. Specifically, Plaintiff argues that the ALJ's failure to discuss a Psychiatric Review Technique ("PRT") and Mental RFC Assessment completed by Frank Mrykalo, Ed.D., on March 14, 2006 necessitates a remand for a new hearing.

In reviewing medical evidence, an ALJ "must 'explicitly' weigh all relevant, probative and available evidence." <u>Adorno v. Shalala</u>, 40 F.3d 43, 48 (3d Cir. 1994) (citations omitted); <u>Brewster v. Heckler</u>, 786 F.2d 581, 584 (3d Cir. 1986). However, the ALJ need only "provide some explanation for a rejection of probative evidence *which would suggest a contrary disposition*." <u>Adorno</u>, 40 F.3d at 48 (emphasis added). Here, the Magistrate Judge properly recognized that the ALJ did not discuss Dr. Mrykalo's findings in his opinion, but correctly found that he was not required to do so, because the PRT and Mental RFC Assessment did not "suggest a contrary disposition," i.e., that Plaintiff was disabled. <u>Id.</u> Indeed, Dr. Mrykalo's PRT concluded that Plaintiff suffered from depression and anxiety disorder not otherwise specified ("NOS"), and that, as a result, she had moderate limitations on her daily living activities as well as difficulties in maintaining concentration, persistence, or pace, and mild difficulties in maintaining social functioning. (R. 205, 207, 212.) However, the PRT also concluded that Plaintiff could think clearly and had no limitations in her ability to respond to supervision or co-workers or to understand, remember, or carry out instructions. (R. 214.) Similar to the PRT, the Mental RFC Assessment concluded that Plaintiff had moderate limitations in her ability to understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule;

5

maintain regular attendance; be punctual within customary tolerances; and make simple work-related decisions. (R. 215.) However, the Mental RFC Assessment did not find significant limitations in any other categories of sustained concentration and persistence, social interaction, or adaptation. (R. 216.) Moreover, Dr. Mrykalo ultimately found that Plaintiff "appears to be fairly capable of: performing simple, routine, light tasks; coping with minor stressors; understanding and remembering simple task instructions," and that Plaintiff "is able to meet the basic mental demands of competitive work on a sustained basis despite the limitations resulting from her impairment." (R. 217.)

Under these circumstances, the Magistrate Judge correctly recommended that the PRT and Mental RFC Assessment did not support a conclusion that Plaintiff was disabled. We therefore agree with the Magistrate Judge that the ALJ did not err in declining to discuss the results of the PRT and Mental RFC Assessment, and we overrule Plaintiff's objection to that aspect of the R & R.

B. Whether the ALJ Erred in Relying on the Medical-Vocational Guidelines

Second, Plaintiff argues that the Magistrate Judge erred by ruling that the ALJ properly relied on the Medical-Vocational Guidelines (the "Guidelines") to find that Plaintiff was not disabled. Plaintiff contends that where, as here, a claimant suffers from both exertional and nonexertional limitations, an ALJ may not rely solely on the Guidelines to find a claimant not disabled but instead must obtain evidence from a Vocational Expert or other similar evidence, such as a learned treatise.

As explained by the Magistrate Judge, "[i]n order to show that a claimant is able to engage in alternative gainful employment . . . the [Commissioner] must first show that a claimant's vocational profile is precisely contained within the guidelines established for each rule of the grid." Washington v. Heckler, 756 F.2d 959, 966 (3d Cir. 1985). Although the Commissioner may satisfy this burden by introducing the testimony of a Vocational Expert, the United States Court of Appeals

6

for the Third Circuit has indicated that "a similar function can[] be served by the medical-vocational tables, which, after all, are based on 'the same sources (e.g., Department of Labor studies) which a vocational expert would consult in determining whether a particular claimant's abilities matches a job's requirements.'" Santise v. Schweiker, 676 F.2d 925, 935 (3d Cir. 1982) (quoting Kirk v. Sec'y of Health and Human Servs., 667 F.2d 524, 530 (6th Cir. 1981)). Certainly, the ALJ may rely on the Guidelines and decline to call a Vocational Expert where a non-exertional limitation is not "'sufficiently severe so as to significantly limit the range of work permitted by the claimant's exertional limitation.'" Hoopai v. Astrue, 499 F.3d 1071, 1075 (9th Cir. 2007) (quoting Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988)) (internal quotation omitted); see also SSR 83-14, 1983 WL 31254, at *6 ("Where it is clear that the additional limitation or restriction has very little effect on the exertional occupational base, the conclusion directed by the [Guidelines] . . . would not be affected."). In the end, the Third Circuit has held that if the Commissioner "wishes to rely on an SSR as a replacement for a vocational expert, it must be crystal-clear that the SSR is probative as to the way in which the nonexertional limitations impact the ability to work, and thus, the occupational base." Allen v. Barnhart, 417 F.3d 396, 407 (3d Cir. 2005).

Here, the ALJ found without calling a Vocational Expert that Plaintiff was not disabled, reasoning that Plaintiff's nonexertional limitations were not severe and did not affect Plaintiff's RFC to perform light work. Specifically, the ALJ found with respect to Plaintiff's exertional capabilities that Plaintiff had the RFC to "lift and carry 20 pounds occasionally and ten pounds frequently, stand and/or walk at least two hours in an eight hour workday, sit about six hours in an eight hour workday, and push and pull without limitation." (R. 17.) Meanwhile, with respect to Plaintiff's nonexertional capabilities, the ALJ found that Plaintiff could withstand "'occasional' postural

7

movement," but should engage in "no climbing of ladders, ropes and scaffolds." (Id.) Citing Social Security Rulings ("SSRs") 83-11, 83-12, and 83-14, the ALJ explained that where a claimant "can perform all or substantially all of the exertional demands at a given level of exertion, the medical-vocational rules direct a conclusion of either 'disabled' or 'not disabled' depending upon the claimant's specific vocational profile." (R. 20.) Pursuant to Medical-Vocational Rules 202.21 and 201.21, the ALJ determined that "[b]ased on a residual functional capacity for a range of light work, and considering [Plaintiff's] age, education, and work experience, a finding of 'not disabled' is directed . . . ." (R. 21.) The ALJ found that it was not necessary to consult a Vocational Expert because Plaintiff's "nonexertional limitations would not significantly erode the range of jobs available to her within her exertion range." (Id.)

The Magistrate Judge correctly recommended that the ALJ properly analyzed Plaintiff's exertional and nonexertional limitations to find that Plaintiff was not disabled pursuant to the Guidelines. As the Magistrate Judge correctly stated, the ALJ did not fully credit Plaintiff's testimony, and with respect to Plaintiff's depression, found that Plaintiff's mental impairments were not severe and imposed no more than a "'mild' limitation in activities of daily living, social functioning, and concentration." (R. 17.) Given the ALJ's conclusions about Plaintiff's exertional and nonexertional limitations, and given that SSR 83-14 describes Plaintiff's particular nonexertional limitations as having "very little or no effect on the unskilled light occupational base," SSR 83-14, 1983 WL 31254, at *5, it was "crystal-clear" that the SSR was "probative as to the way in which [Plaintiff's] nonexertional limitations impact the ability to work, and thus, the occupational base." Allen, 417 F.3d at 407. The Magistrate Judge therefore correctly recommended that it was appropriate for the ALJ to rely on the Guidelines instead of appointing a Vocational Expert to

8

evaluate Plaintiff's nonexertional impairments. Accordingly, we approve and adopt the Magistrate Judge's recommendation that it was appropriate for the ALJ to rely on the Guidelines in finding Plaintiff not disabled.

    C.    <u>Whether the ALJ Erred in Finding Plaintiff's Depression Was Not a Severe Impairment</u>

Finally, Plaintiff contends that the Magistrate Judge committed a reversible error of law in ruling that the ALJ's conclusion that Plaintiff's depression was not a severe impairment was not erroneous. Plaintiff contends that the ALJ's conclusion was contrary to the medical evidence that (1) Plaintiff underwent extensive mental health treatment and received an initial diagnosis of depression NOS with a differential diagnosis of anxiety NOS (R. 145-47, 251-338, 322), as well as subsequent diagnoses of dysthymia, histrionic personality disorder, and depression (R. 251, 253-59, 262-63, 265-68, 270, 273-74, 276-78, 280-95, 297-99, 302-06, 308-13, 315); (2) Plaintiff was prescribed Triavil, Diazepam, and Valium (R. 336); (3) during Plaintiff's visits to Thomas Jefferson University Hospital from February 2005 through December 2006, she at times was, <u>inter alia</u>, angry, upset, frustrated, and tearful (R. 281, 280, 278, 277, 276, 270, 263, 258, 256, 253, 251); and (4) Plaintiff suffered from a medically determinable impairment of depression and anxiety, which imposed limitations on her mental ability to function (R. 217, 215-16).

This argument, however, overlooks the wealth of contrary medical evidence contained in Plaintiff's treatment notes, on which the ALJ relied to find that Plaintiff's depression was not a severe impairment. For example, as noted by the Magistrate Judge, a note in the treatment records indicates that Plaintiff passed her certified nursing assistant test and was looking for a job as of October 17, 2006. (R. 262.) Additionally, the lowest Global Assessment of Functioning ("GAF")

9

rating contained in the records is 60, and the records contain evidence of improvement thereafter.[2] (R. 328-35.) The entirety of Plaintiff's psychiatric treatment records further indicate that Plaintiff suffered from mild dysthymia, but retained full affect and fair concentration. Under the circumstances, we agree with the Magistrate Judge that there was substantial evidence to support the ALJ's conclusion that Plaintiff's "mental impairments are 'nonsevere,' resulting in no more than 'mild' limitation in activities of daily living, social functioning, and concentration, with no past episodes of decompensation of extended duration." (R. 17.) Accordingly, we overrule Plaintiff's objection to the R & R insofar as it found no error in the ALJ's conclusion that Plaintiff's depression did not constitute a severe impairment.

## IV. CONCLUSION

For the foregoing reasons, we overrule Plaintiff's objections to the R & R of Magistrate Judge Angell, and approve and adopt the R & R in its entirety, including its ultimate recommendation that the ALJ's decision was supported by substantial evidence. As a result, we deny Plaintiff's Request for Review, as well as her Motion for Summary Judgment. An appropriate Order follows.

BY THE COURT:

/s/ John R. Padova
John R. Padova, J.

---

[2] The GAF is a subjective rating of psychological functioning on a scale of 0 to 100. A GAF in the range of 51 to 60 indicates "moderate symptoms" or "moderate difficulty in social or occupational functioning." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (4th ed. rev. 2000) at 34.